1                    UNITED STATES DISTRICT COURT

2                      DISTRICT OF CONNECTICUT

3        *      *      *      *      *      *      *

4    UNITED STATES OF AMERICA        *

5                                    *  Case No 02cr340(JBA)

6              VS.                    *

7    EDWARD DAILEY                    *  MAY 25, 2004

8        *    *    *    *    *    *    *    *

9

10                TRANSCRIPT OF SENTENCING HEARING

11

12   B E F O R E:

13            THE HON. JANET BOND ARTERTON, U.S.D.J.

14

15   APPEARANCES:

16          FOR THE GOVERNMENT:
            UNITED STATES ATTORNEY'S OFFICE
17          450 Main Street
            Hartford, Ct.
18          BY:  ROBERT SPECTOR, ESQ.

19
            FOR THE DEFENDANT:
20          OFFICE OF THE FEDERAL DEFENDER
            2 Whitney Avenue
21          New Haven, Ct.
            BY:  ROGER SIGAL, ESQ.
22

23
                        Sharon Montini
24                   Official Court Reporter

25

EXHIBIT A

```
 1              THE COURT: Good afternoon, ladies and
 2    gentlemen, counsel.  Please be seated.  We are here
 3    this afternoon in the sentencing hearing in United
 4    States of Americas v. Edward Dailey, 02cr340.  May
 5    I have appearances, please.
 6              MR. SPECTOR: Yes, your Honor.  Robert
 7    Spector for the government.
 8              THE COURT: Good afternoon.
 9              MR. SIGAL: Good afternoon, your Honor.
10    Roger Sigal on behalf of Edward Dailey who is
11    present in custody.
12              THE COURT: Good afternoon, Mr. Sigal and
13    Mr. Dailey.  And Ms. Hunt, who is the U.S.
14    probation officer who prepared the presentence
15    report, is also present in the courtroom.
16              Mr. Dailey and Mr. Sigal, will you come
17    to the lectern?  How is your leg today?
18              MR. SIGAL: His leg has gotten a lot
19    better.
20              THE COURT: Mr. Dailey, have you read the
21    presentence report and reviewed it with your
22    lawyer?
23              THE DEFENDANT: Yes.
24              THE COURT: And do you understand its
25    contents?
```

```
 1                  THE DEFENDANT: Yes, your Honor.
 2                  THE COURT: All right, and have you had
 3    enough opportunity to give input regarding the
 4    contents of the report to the probation officer
 5    through your lawyer or directly?
 6                  THE DEFENDANT: Yes, your Honor.
 7                  THE COURT: Any reason why sentence
 8    should not be imposed today?
 9                  THE DEFENDANT: No, your Honor.
10                  THE COURT: All right then, we will
11    proceed.
12                  Mr. Sigal has filed a memorandum which
13    notes several points that the defendant wishes to
14    be taken into -- to be included in the presentence
15    report.  Some of those I would request be contained
16    in an addendum.  One, that we have had a birthday,
17    and Mr. Dailey is now 43 since the presentence
18    report was prepared.
19                  Secondly, in the paragraphs noted 15 and
20    17, there should be a supplement that notes in fact
21    now Mr. Dailey has provided to the Court a
22    statement which is considered for the purpose of
23    acceptance of responsibility.
24                  Paragraph 38, the defendant takes issue
25    with the probation reports and records that reflect
```

1    he brandished a knife in connection with the

2    shoplifting.  I'll ask that the addendum notes that

3    he takes -- that he disputes that, but that is what

4    is in the state probation records.

5              Similarly, from paragraph 52, the

6    Department of Correction records reflect the

7    discipline that Mr. Dailey contests, but that is

8    what the probation officer has verified that is

9    what the Department of Corrections records show,

10   and all paragraph 52 says is that they show that he

11   was cited for SRG safety threat, 20 Love Gang.  I

12   can't do anything about what the Department of

13   Correction records show, so I don't think there

14   needs to be any change on that.

15             Lastly, paragraph 58, I think the

16   addendum should note that the defendant disputes

17   the contents of the state probation records with

18   respect to his parents, and that he accepts

19   responsibility for his conduct and does not blame

20   it on his patents or his childhood.

21             I think those were the issues that you

22   raised, Mr. Sigal.

23             MR. SIGAL: That's right, your Honor, and

24   I would just add one note.  With respect to

25   paragraphs 15 and 17, I had also requested that

5

```
 1    simply the presentence report, or now the addendum,
 2    could indicate also that the defendant had admitted
 3    his guilt to the police.
 4                THE COURT: What record would show that?
 5                MR. SIGAL: There is a police report, or
 6    report of interview by Police Officer Hawkins.
 7    Actually, Mr. Daily sought to introduce it during
 8    the hearing and I objected on relevance grounds at
 9    that time, but we can provide it to the Court.  I
10    don't have it with me, but I can provide it.
11                THE COURT: All right, if that turns out
12    to be a report that the probation officer reads the
13    same way you do, then she can include that in her
14    addendum, what that report says.
15                MR. SIGAL: There wasn't really much
16    issue about that.
17                THE COURT: Okay, and I don't believe
18    that otherwise there were any other objections to
19    the factual statements contained in the presentence
20    report from the defendant's standpoint.
21                MR. SIGAL: That is correct, we're not
22    contesting any of the other factual statements.
23                THE COURT: All right, from the
24    government's standpoint, I have no objections,
25    right, Mr. Spector?
```

1          MR. SPECTOR: Your Honor, there was just

2     a letter sent on April 20, 2004 which simply

3     corrects the spelling of the AUSA name as a minor

4     correction, but I think the only issue addressed

5     was whether a motion needed to be filed for the

6     third point.  The U.S. attorney's office is taking

7     the position it doesn't need to be filed because

8     the offense occurrence date occurred prior to April

9     30, 2003, and so, therefore, he would get the three

10    points or not get the three points based on the

11    government's recommendation and there didn't need

12    to be an extra motion filed.  I don't know that

13    that was an issue.

14          THE COURT: Now, paragraph 18, I note,

15    says that the 2003 Sentencing Guideline Manual was

16    used, but I'm wondering if in fact it would be more

17    accurate to say the 2002, the guidelines in effect

18    in 2002.  I don't think it makes any difference for

19    sentencing purposes, but it does for the three

20    levels, whether that's just done by recommendation

21    or by motion.

22          MR. SPECTOR: Yes, your Honor.

23          THE COURT: Then I'll ask that that be

24    corrected as well, that it is the guidelines in

25    effect November 2002 that applies to this case.

```
 1              All right, so with those alterations,
 2   the Court adopts the factual statements contained
 3   in the presentence investigation report and notes
 4   that Mr. Dailey stands convicted of the crime of
 5   possession of a firearm by a convicted felon, in
 6   violation of 18 U.S.C. 922(g) by his conditional
 7   guilty plea, and --
 8              MR. SIGAL: Sorry, your Honor.
 9              THE COURT: No, that's all right if you
10   need to discuss something with him.
11              MR. SIGAL: We're fine, your Honor.
12              THE COURT: And the conditional guilty
13   plea is the preservation of his right to appeal the
14   Court's ruling on denying his motion to suppress,
15   and that's fine.
16              The offense level under 4B1.4(b)(3)(A)
17   is a 34, given that Mr. Dailey's criminal history
18   shows him to be an armed career criminal, as that
19   term is defined in 18 U.S.C. 924(e), with three
20   prior drug or violent felony convictions, and
21   because the gun at issue in this unlawful
22   possession of a firearm was in connection with drug
23   transactions.  There are no adjustments for role,
24   victim, obstruction of justice, and Mr. Dailey, by
25   virtue of his entry of plea and letter to the
```

```
1    Court, qualifies for a three-level reduction under

2    3E1.1 for acceptance of responsibility.

3              So the total offense level is a 31, and

4    I have no objections from either side on that

5    application of the guidelines that the presentence

6    report sets forth.

7              MR. SPECTOR: That is correct, your

8    Honor.

9              MR. SIGAL: Correct, your Honor.

10             THE COURT: All right. And there is no

11   dispute that Mr. Dailey has a criminal history

12   category six.

13             MR. SPECTOR: Correct, your Honor.

14             MR. SIGAL: No, your Honor.

15             THE COURT: And then some. His guideline

16   range, therefore, is 188 to 235 months. The fact

17   that there is a 15-year mandatory minimum does not

18   come into play. There has been no motion

19   suggesting, nor does the Court see, any ground for

20   departure. The question, therefore, is where

21   within the sentencing range sentence should be

22   imposed.

23             And I'll hear from you, Mr. Sigal, then

24   from Mr. Spector, and then from Dailey if he

25   wishes.
```

| | |
|---|---|
| 1 | MR. SIGAL: Thank you, your Honor. |
| 2 | This is indeed a sad day for Mr. Dailey, |
| 3 | and I think for everybody involved. He made a huge |
| 4 | mistake in possessing the weapon as a firearm, and |
| 5 | he knows that. He understood that at the time and |
| 6 | acknowledged that at the time to the police |
| 7 | officers. The sentencing range dictated by the |
| 8 | sentencing guidelines is extremely high, 188 to 235 |
| 9 | months. As you know, because of Mr. Dailey's |
| 10 | status as a career offender, the 10-year mandatory |
| 11 | -- or maximum does not apply, and instead there is |
| 12 | a mandatory minimum of 15 years, which as the Court |
| 13 | noted, does not really come into play, but as a |
| 14 | result of a guidelines application he's sentenced |
| 15 | much more severely. |
| 16 | As the Court knows, this is an |
| 17 | extremely, extremely high sentencing range, and, |
| 18 | it's one that, the defendant would submit, is |
| 19 | adequate at the low end to punish his wrongdoings. |
| 20 | There is probably -- there is not much doubt in my |
| 21 | mind, probably the most -- the biggest concern of |
| 22 | the Court is Mr. Dailey's criminal history, and |
| 23 | while Mr. Dailey would be the first to admit that |
| 24 | he is not a choirboy, nor has been, and has made in |
| 25 | fact extremely serious mistakes throughout his |

1    life, and these comments are mine, not his, but if
2    you take a look at his record, while there are some
3    serious crimes, a majority of the crimes are indeed
4    relatively minor.

5              I noted in my presentence report that I
6    think approximately five of the -- four or five
7    were minor larcenies, for misdemeanors, motor
8    vehicle without use -- motor vehicle without
9    permission, a failure to appear, reckless
10   endangerment, and a number of other of his
11   convictions, I believe it was seven, related to
12   drugs exclusively, either possession or sales.

13             He's a person that no doubt has come to
14   this point in his life as a result of a drug
15   problem.  He acknowledges that he's got a drug
16   problem.  He acknowledges that the reason why his
17   record looks the way it does is as a result of his
18   drug problem, and he's seeking help for that drug
19   problem, and sought help for that drug program
20   really for the first time in his life.

21             He's getting to that point in his life,
22   or he's gotten to that point in his life, where he
23   understands, especially with the additional
24   sentence that the Court is required to give him,
25   that this life is no longer for him of necessity;

1   he won't live much beyond his 50s if he continues
2   to use drugs.

3              I think that's why he sought help from
4   the Hartford Dispensary, and it was his first
5   serious attempt at rehabilitation.  I think that
6   bodes extremely well, not the fact that it was his
7   first attempt, but the fact that Mr. Dailey took it
8   upon himself to get involved in treatment and to
9   stay in treatment.  It didn't happen as a result of
10  some probation officer or parole officer saying,
11  "Ed, you've got to get yourself into a program."
12  It came because Mr. Dailey was sick of his life as
13  he then knew it and wanted to better himself.
14  Unfortunately I guess the appendages of the drug
15  culture didn't all terminate when he began his drug
16  program, and he did commit this offense.

17             I believe that 188 months in prison is
18  an extremely long period of time in which Mr.
19  Dailey will have a chance to reflect upon his
20  entire life, where it's headed, where it will head
21  if he continues down the same path, and I can tell
22  you from my discussions with him, your Honor, that
23  Mr. Dailey really seriously understands that he
24  can't do this anymore.  Not just that he doesn't
25  want to, but he simply physically cannot do it

1  anymore.

2         Mr. Dailey, I've had a lot of chance to

3  speak with Mr. Dailey over the past couple of years

4  now, and although Mr. Dailey is what I would term a

5  little gruff, he's been extremely easy to work

6  with.  He's been very responsive, very interested,

7  very actively involved in the hearing, very

8  respectful, and has never posed the type of problem

9  that defendants who have similarly long records

10  often pose to attorneys such as myself.  He's been

11  a pleasure to work with.  And not that that's an

12  official reason for the Court to treat him with any

13  leniency, but he really has shown that he does have

14  a heart, that he cares, and that he can be I think

15  a productive member of society.

16         I've really sort of gone over all of the

17  specific reasons why I suggest to the Court that I

18  think a 188-month sentence would be sufficient.  I

19  would note again that with respect to his criminal

20  history, the one most serious crime that he

21  committed was back 26 years ago, 1978, the robbery

22  one.  Although he certainly is not barely a candid

23  for ACCA, and certainly meets the requirements,

24  those convictions were not viewed as extremely

25  serious by the sentencing courts, as is viewed by

1   the sentences that were imposed.  Certainly the

2   sentence that he received for 111 months was by far

3   the most serious sentence that he received, and

4   that was for the sale of illicit drugs.  Again,

5   while it's a dangerous crime to society and

6   certainly affects a number of individuals, it's not

7   what's typically thought of as a victim crime.

8          His other convictions, which I would

9   believe most courts, including yourself, would be

10  concerned about, were sentenced with relatively

11  smaller sentences, especially based on his criminal

12  history.  I would note that the last conviction for

13  what would be I guess considered a predicate

14  offense for ACCA, was 10 years ago for assault on a

15  correctional officer where he received a three-year

16  concurrent jail term, and I think the fact that it

17  was concurrent is significant, at least I think it

18  shows the Court how the sentencing court viewed

19  that offense, while obviously serious.

20         Prior to that, you go all the way back

21  to 1988 before there was what I would term -- well,

22  certainly a crime of violence, paragraph 43,

23  robbery three, again, not an armed robbery, he

24  received a four-year concurrent sentence, which

25  based on his prior record I think is a reflection

 1    of -- while every robbery is obviously serious, is
 2    obviously a serious crime, I think it's a
 3    reflection of the fact that it was not a robbery
 4    that was a particularly dangerous robbery, or one
 5    that had any -- caused any particular -- certainly
 6    no injuries, and there was nothing particularly so
 7    violent or so terrible about that conviction that
 8    it called for anything less than a robbery three
 9    conviction with a four-year concurrent sentence.
10    And that's 16 years ago when he was 27.

11            You know, page -- or I guess not page
12    after page, but entry after entry with, you know,
13    the exception of leaving the Salvation Army, which
14    is actually drug related, which was the escape
15    first, and interference with a police officer, all
16    of those convictions have all been narcotics or
17    narcotics related up to October of '88, and the
18    vast majority before that time were either
19    larcenous conduct, which is typically associated
20    with someone who has an expensive addiction, and
21    also what I would call relatively minor offenses,
22    and again obviously the first offense that he
23    committed in May of '78 appears to have been
24    serious and he was sentenced to two and a half to
25    eight years, of which, as I remember, he spent

1     approximately three years in prison.

2            I think it's important that the Court

3     note other than that 111-month sentence, of which

4     he served approximately eight years, the sentence

5     -- the longest sentence that he had served before

6     that time was approximately three, three and a half

7     years. So we're not talking about someone that's

8     -- while obviously we are talking about someone

9     that's been before the court repeatedly, we're not

10    talking about someone that's been repeatedly

11    punished with extreme severity such that you could

12    come to the conclusion that whatever kind of

13    sentence you are going to dole out today is not

14    going to cause Mr. Dailey to seriously think about

15    the direction of his life and change where it's

16    going.

17            Fifteen years is basically close to

18    double of any sentence that he's previously served,

19    and at the age of 43 now, and certainly not being

20    able to be released prior to the age of anywhere

21    near 55, I think that the risk of recidivism is

22    greatly reduced.

23            So, I would leave the rest to my

24    sentencing memorandum, your Honor, and just say

25    while Mr. Dailey certainly looks bad on paper, and

1 | certainly did -- was bad on the streets, it was
2 | essentially a record of somebody who committed a
3 | lot of petty larceny and drug offenses and who
4 | committed a lot of offenses that were much older.
5 | I understand that he did have a significant period
6 | of incarceration beginning in 1993, but there has
7 | been no -- other than the police officer
8 | conviction, there was no other serious violent
9 | crimes part of that prior to that time for many,
10 | many years.

11 | I think 15 years and eight months is
12 | extremely -- will have a huge impact on Mr. Dailey,
13 | and I'm confident that he's on his way to making
14 | the right decisions for his life, not for the
15 | Court, but for his own purposes.

16 | There were going to be a couple of
17 | individuals on his behalf speaking, Denise Velez,
18 | who you've had the opportunity to speak with, and
19 | his sister Jerilyn. Mr. Dailey told them not to
20 | come. He really didn't want them to be present for
21 | what's a very -- what would be a very upsetting
22 | experience for them. So, it's a sad day, over 15
23 | years will be an extremely long sentence, and I
24 | think is a very proportionate sentence, or
25 | overproportionate sentence to the crime of

1    possession of a weapon or a firearm with a prior

2    conviction.

3            THE COURT: Well, it's all driven by the

4    criminal history.

5            MR. SIGAL: Certainly.

6            THE COURT: Mr. Spector.

7            MR. SPECTOR: Your Honor, the government

8    filed a motion yesterday indicating that the

9    applicable range being --

10           THE COURT: A memorandum?

11           MR. SPECTOR: Yes, a memorandum, very

12   brief memorandum, simply indicating that the

13   applicable range being 188 to 235, asking the Court

14   to simply sentence the defendant within the range.

15   I didn't want to make any recommendation as to

16   where within the range, but I did want to respond

17   briefly to some of the comments that defense

18   counsel made simply for the record. I'm standing

19   in for another assistant, so I prepped the case by

20   first reading the defendant's memorandum.

21           THE COURT: It does make it more

22   convenient since we've had the confusion throughout

23   of having two Daileys involved.

24           MR. SPECTOR: And when I started with the

25   defendant's memorandum and then read the PSR, I was

1    struck by what a different view of the criminal

2    history I got from those two documents.  I do have

3    to disagree with the comments about -- or at least

4    trying to suggest that this range of 188 to 235

5    months is overly harsh for this defendant.  It is

6    driven by his criminal history.

7              His criminal history is very

8    significant.  Sometimes in explaining the criminal

9    statute to others who have never dealt with it

10   before, I use the analogy of decks of cards, you

11   know, there is a deck for possession with intent to

12   sell drugs and sale of narcotics, there is a deck

13   for felony burglary, a deck for felony robbery, a

14   deck for felony assault.  I try to explain if you

15   have three cards, any combination from any of those

16   decks, you would be an armed career criminal.

17             This defendant had cards from the

18   robbery, the assault and the sale of narcotics

19   decks, and he had several of them, eight by the PSR

20   count, I counted 10, but that's counting possession

21   with intent to sell.  I don't know that that was a

22   conviction, it's noted in paragraph 41 of the PSR.

23   And then there is a first degree escape which some

24   courts will analyze as an armed career criminal

25   felony conviction.

1          I don't think it really matters, but I
2     do think it's significant. The recency of the
3     convictions is due to the 111-month sentence. In
4     other words, the reason that the last conviction,
5     the assault on the correction officer, sale of
6     drugs, is it appears he was incarcerated for that
7     period of time. In fact, it looks like he got two
8     extra points for criminal history because the
9     current offense was committed within two years of
10    that December 28, 2001 release date.

11          So, I'm not sure that the idea of the
12    convictions being older gets us anywhere because of
13    the time spent in jail. The fact is, he actually
14    did pick up another conviction, an armed career
15    criminal, conviction while in jail.

16          So, I think the criminal history here is
17    significant, not just because of the history, not
18    just because of the number of qualifying
19    convictions, but because how varied they are, and
20    several of them involve violence. We don't just
21    have sale of narcotics convictions. As your Honor
22    knows, your Honor deals with armed career
23    defendants, some of whom have hardly spent time in
24    jail, who stand before the Court with several sale
25    of narcotic convictions, but very few violent

1   convictions, and that's not where we are here.  We

2   have somebody who's been in jail for a significant

3   period of time and for crimes of violence, not just

4   for sale convictions.

5            The other point that I think bears some

6   mention is that the 188 to 235 range is due to the

7   current offense, it's not just due to the criminal

8   history, that is, if not for the drug connection

9   with the underlying offense we'd be in a range of

10  180 to 210, or effective range of 180 to 210.  So,

11  it's not just the underlying drugs that is driving,

12  it's the underlying case that involves guns in

13  connection with sale of narcotics offense.

14           I don't disagree with the comments that

15  any sentence within the range is a significant

16  sentence, but I simply wanted to respond to the

17  suggestion that the range itself might be overly

18  harsh.  111 months is a very harsh sentence and one

19  that's already been ordered on the defendant, and

20  yet within a year of being released, we are back in

21  the same position as we were for that sentence.

22  That appears to be a sale of narcotics case, and

23  certainly the underlying facts of this case involve

24  sale of narcotics.

25           Thank you.

```
 1                    THE COURT: Thank you.

 2                    Mr. Dailey.

 3                    THE DEFENDANT: I don't have any -- no,

 4     nothing, nothing.

 5                    MR. SIGAL: Mr. Dailey, your Honor, would

 6     rest on his comments in his letter to you.

 7                    THE COURT: That's fine.  It's an

 8     opportunity, it's not a requirement, Mr. Dailey.

 9                    It's always a sad occasion when someone

10     is going to receive a very long sentence, but it's

11     a sad occasion because it reflects wasted life

12     opportunities.  I am taken by the idea, both

13     expressed by Mr. Sigal and expressed by Mr. Dailey

14     himself in his letter, that possibly at long last

15     we've come to a turning point, having fully

16     recognizing that this conviction put Mr. Dailey in

17     range of a significant sentence, a mandatory

18     minimum of 15 years to begin with.  The Court fully

19     recognizes the seriousness of the motion to

20     suppress and the consequences, and recognizes that

21     the correctness or not will now be determined on

22     appeal with significant outcome if in fact the

23     Court was wrong.

24                    But in the course of deciding that

25     motion, given its enormous consequences, I have
```

1    come to know Mr. Dailey somewhat, not the least of

2    which from listening to all of his telephone calls

3    with Ms. Velez in prison, which I listened to every

4    one of. So that when you and Ms. Velez say "just

5    between you, me and the DOC," you forgot one more

6    party, me. But in the course of that I came to

7    understand that Mr. Sigal is -- I understand why

8    Mr. Sigal says that you have a heart and you care

9    for Ms. Velez and for your sister.

10            Obviously not much more needs to be said

11    about your criminal history. It is a history. It

12    is of such a nature that the Court is persuaded

13    that in this case the guidelines do seem to be

14    appropriate, having reviewed U.S. v. Mishoe quite

15    carefully in the last few days, and recognizing

16    that as a function of the longest sentence

17    previously imposed, this is not disproportionate if

18    the purpose is deterrence.

19            It is by any standard a long sentence.

20    I think that's what Congress had in mind, however,

21    but it seems to me that there is no point, given

22    the length of the sentence and the implication for

23    the stage of life at which Mr. Dailey will be

24    released, to do other than impose sentence at the

25    bottom of the guideline, and accordingly, a

1    sentence of 188 months is imposed, and you are

2    remanded to the custody of the attorney general of

3    the United States for that period of time,

4    following which you will be on supervised release

5    for five years.

6             Special conditions will be the

7    participation in a program of mental health and

8    substance abuse treatment, either on an inpatient

9    or an outpatient basis, as approved by the U.S.

10   probation officer with you paying what you are

11   financially able to pay for those -- for the

12   program and treatment, and that will include

13   urinalysis testing for use of drugs or alcohol.

14            A special assessment of $100 is required

15   to be imposed under 18 U.S.C. 3013 payable to the

16   clerk of this court.  On the assumption that you

17   are not prepared to pay that today, I'll make that

18   a requirement that you pay it from the inmate

19   financial security program.  I'll waive any fine

20   due to your inability to pay.

21            Notification of appeal, which is

22   critical in this case, is that any notice of appeal

23   must be filed no later than 10 days from today.  If

24   you cannot afford the cost of the appeal, apply to

25   proceed in forma pauperis and the clerk of the

1   court will prepare and file the notice of appeal

2   for you.  If you cannot afford counsel for the

3   appeal, prepare the appropriate financial documents

4   and the Court will appoint counsel for you for the

5   purpose of that appeal.  Obviously, since you have

6   entered a conditional plea so that you can take

7   that appeal, and it is an interesting appeal, you

8   must be very attentive to those guidelines -- those

9   deadlines.

10          With respect to mandatory conditions of

11  supervised release, you shall not commit another

12  federal, state or local offense; you shall not

13  unlawfully possess a controlled substance; you

14  shall refrain from any unlawful use of a controlled

15  substance, and submit to one drug test within 15

16  days of release on supervised release, and at least

17  two periodic drug tests thereafter.  And the

18  standard conditions of supervised release will

19  apply and be given to you in writing.

20          You describe yourself as, in part, being

21  angry and vengeful.

22                  THE DEFENDANT: It all depends, I said.

23                  THE COURT: Pardon?

24                  THE DEFENDANT: I said it all depends.  I

25  said it all depends.  If you get on the wrong side

```
1   of me, like if you double, triple cross me, I think
2   that's like the way I put it.  Like if you did me
3   some wrong, then I could become vengeful.
4               THE COURT: Anger and vengefulness isn't
5   going to get you --
6               THE DEFENDANT: No.
7               THE COURT: -- a long way.
8               THE DEFENDANT: I said at the same time I
9   sort of like had control of that, depending on the
10  situation.  Hopefully I can.
11              THE COURT: Well, you have identified
12  that, now is the turnaround time.  Don't waste the
13  time that you have that's in prison.  There are
14  things you can do.  It's now up to you to do the
15  remarkable thing.  You've done the unremarkable
16  thing of creating a terrible criminal history
17  record for yourself, and now it's time for you to
18  do the remarkable thing, which is a turnaround that
19  people will say, "Is that Ed Dailey, this guy who
20  is now a fully productive, fully recovered person,
21  actively and productively participating in
22  society?"  You have it in you to do it, and this
23  just might be the turnaround that would set
24  everybody back on their heels saying, "Well, now."
25  So, I challenge you to do that because you have it
```

1    in you and you have people who care about you, and
2    it's your choice.
3                 Is there anything further, Mr. Sigal?
4                 MR. SIGAL: Just a couple of
5    recommendations with respect to sentencing, your
6    Honor.  I would request that the Court recommend a
7    designation as close to Connecticut as possible so
8    he can be close to his loved ones, and also the
9    Bureau of Prisons will have to determine whether he
10   qualifies for it, but I would ask for a
11   recommendation for a medical placement, or at least
12   an evaluation to determine whether a medical
13   placement would be appropriate, and we were just
14   discussing, your Honor, whether a placement in the
15   intensive drug treatment program at the Bureau of
16   Prisons would cause him to be -- to lose some of
17   the educational opportunities that he might
18   otherwise have, and it's my understanding it would
19   not.
20                 So, we would request, understanding if
21   he -- well, he's not eligible for a one-year
22   reduction pursuant to the statute, but still for
23   his own sake, a recommendation to the 500-hour
24   intensive drug treatment program.
25                 THE COURT: All right, I will make the

1    recommendation that you be designated to a facility

2    as close to Connecticut as possible, but as a

3    higher priority, a facility with the availability

4    of a 500-hour intensive drug treatment program. Is

5    that correct? Is that the priorities?

6           MR. SIGAL: Because it's -- because it's

7    going to be a long time in prison, and really all

8    he's got are his close relatives, we would request

9    that his first priority would be to stay as close

10   as possible. It is my understanding, however, that

11   there are a number of facilities within the general

12   area. I know that Allenwood has one. There are

13   two or three that I know that are in the general

14   vicinity.

15          THE COURT: All right, and then I will

16   note that a medical evaluation would seem

17   appropriate to determine if a placement in a

18   medical facility is appropriate.

19          All right, is there anything that I have

20   left out, that I have left unclear?

21          MR. SPECTOR: No, your Honor.

22          MR. SIGAL: I don't believe so, your

23   Honor.

24          THE COURT: Anything from probation?

25          PROBATION OFFICER: No your Honor.

1              THE COURT: All right, thank you very

2  much.  And we will next hear from the Court of

3  Appeals.  Stand in recess.

4          (Recess)

5

6

7

8

9

10

    I certify that the foregoing is a correct
11  transcript from the record of proceedings in the
    above-entitled matter.

12                    _____
                     Date

13

14         - - - - - - - - - - - -
            Official Reporter

15

16

17

18

19

20

21

22

23

24

25