DOCKET NO. CR020566982 S        : SUPERIOR COURT

STATE OF CONNECTICUT            : JUDICIAL DISTRICT

        V.                            : HARTFORD, CONNECTICUT

EDWARD DAILEY                   : SEPTEMBER 22, 2004


BEFORE:


       THE HONORABLE THOMAS P. MIANO, JUDGE


A P P E A R A N C E S :


      REPRESENTING THE STATE:

      CHRIS PELOSI, ASA
      STATE'S ATTORNEYS OFFICE
      101 LAFAYETTE STREET
      HARTFORD, CONNECTICUT 06106


      REPRESENTING THE DEFENDANT:

      ATTORNEY JACK FRANCKLING
      41 A NEW LONDON TURNPIKE
      GLASTONBURY, CONNECTICUT 06066


      ALSO APPEARING:
      ATTORNEY GARY WEINBERGER
      ASSISTANT FEDERAL DEFENDER


          JAIME DUBOIS-DELAROSA
            COURT MONITOR


EXHIBIT D

1                    THE COURT:  This is the Dailey matter.  You're

2          Mr. Edward Dailey, sir?

3                    THE DEFENDANT:  Yeah.

4                    THE COURT:  Is there a problem?

5                    MR. FRANCKLING:  I don't think so.

6                    THE COURT:  Okay.  Attorney Franckling

7          represents this gentleman.

8                    MR. FRANCKLING:  Yes, Your Honor.

9                    THE COURT:  And would you state your name for

10         the record, sir, please?

11                   MR. WEINBERGER:  Yes, Your Honor, Gary

12         Weinberger, assistant federal defender.  I represent

13         Mr. Dailey in an unrelated federal matter.  But that

14         matter -- the resolution of that matter is

15         intertwined, to some extent, with this state case.

16                   THE COURT:  Understood and that's why you're

17         here.

18                   MR. WEINBERGER:  Yes, Your Honor.

19                   THE COURT:  And who is handling this for the

20         state?

21                   MR. PELOSI:  Chris Pelosi for the state, Your

22         Honor.

23                   THE COURT:  It is my understanding that the

24         defendant is going to go to plea here, this

25         afternoon, on a robbery in the first degree.  And it

26         is also my understanding that the state is

27         recommending to the Court, I assume along with the

1       defense, for an unconditional discharge.  And that's

2       rather unusual and that's why I want to be

3       particular.

4            And it is my understanding -- Mr. Weinberger,

5       why don't you put this on the record?  And you're

6       right where the federal matter is intertwined here.

7       It's my understanding -- well, why don't you tell me

8       what the status is of the federal matter.

9            MR. WEINBERGER:  Yes, Your Honor.  Mr. Dailey

10      was unsuccessful on a motion to suppress in federal

11      court.  He then entered a guilty plea which reserved

12      his right to appeal the adverse ruling on the motion

13      to suppress.  He was sentenced to a hundred-eighty-

14      eight-months which is fifteen years eight months and

15      filed his notice of appeal.  In conversations with

16      Attorney Franckling and Mr. Dailey, and

17      conversations they've had with the state's attorneys

18      office and conversations I've had with the Assistant

19      United States Attorney Thomas Dailey, a global

20      resolution has been proposed in which Mr. Dailey

21      were to withdraw his appeal the state would make the

22      offer that Your Honor just intimated that is a

23      conditional discharge on the pending robbery

24      charges.

25           THE COURT:  It is also my understanding, based

26      on the information you provided me, Counselor -- and

27      I'm certainly not familiar with the federal statutes

1    -- that the two years in which he was held on this

2    state robbery charge, because of the nature of the

3    disposition, that the federal government would give

4    him credit for that on the federal sentence.

5           MR. WEINBERGER:  Yes, Your Honor.  Under Title

6    18, United States Code Section 35-85b.

7           THE COURT:  That's what you've provided me with

8    a copy?

9           MR. WEINBERGER:  Yes, Your Honor.

10          THE COURT:  Yes, sir.

11          MR. WEINBERGER:  His federal sentence will

12   commence at whatever time he is received into

13   federal custody.  For example --

14          THE COURT:  For the past two years, while this

15   state case was pending, he has been in state custody

16   and not receiving federal credit?

17          MR. WEINBERGER:  That's right.  But if he takes

18   a conditional discharge today, he could convert into

19   federal custody today.  His federal sentence would

20   start today.  Under 35-85, he would get credit for

21   the two years or more that he's been in state

22   custody --

23          THE COURT:  On this case?

24          MR. WEINBERGER:  On this case, because under

25   federal law he gets credit for all time spent in

26   custody not credited to any other sentence.  And

27   because a conditional discharge, the Department of

1    Correction would not apply any of those two years to

2    the conditional discharge all of that time would be

3    applied to his federal sentence.

4         THE COURT:  Now, again, I'm not familiar with

5    federal law and I rely on your representation as an

6    officer of the court.

7         MR. WEINBERGER:  Yes, Your Honor.

8         THE COURT:  All right.

9         MR. WEINBERGER:  And, excuse me, Your Honor.

10   Mr. Dailey had a question which he wanted to present

11   to Your Honor --

12        THE COURT:  Yes, sir.

13        MR. WEINBERGER:  -- which is one aspect of what

14   I said and that is:  If he gets a conditional

15   discharge is it true that the Department of

16   Correction would not apply any of the time that he's

17   been in custody toward that sentence as credit

18   toward that sentence?  And I think it is obviously

19   the case, but I know he wanted to be reassured on

20   that.

21        THE DEFENDANT:  Well, he can't reassure me

22   because he don't know federal law, so therefore, I

23   got to take it from you.

24        MR. WEINBERGER:  That's not an operation of

25   federal law, that's an operation of state law.

26        THE COURT:  Hold on, sir.  I'll answer any

27   questions.  You're asking me -- you're saying that

1    his question is what, Mr. Weinberger?

2          MR. WEINBERGER:  In part, he wants to

3    understand what it means to get an unconditional

4    discharge.  That is --

5          THE COURT:  Is it a conditional discharge or an

6    unconditional discharge, state?

7          MR. PELOSI:  Your Honor --

8          THE COURT:  You use that term.  It is not

9    interchangeable.

10          MR. WEINBERGER:  Well, I'm sorry.  Let me

11    rephrase.

12          THE COURT:  Okay.

13          MR. WEINBERGER:  Whether it is conditional or

14    unconditional it doesn't matter in terms of how the

15    Department of Correction would treat the two years

16    that he's been custody.

17          In other words, under either of those sentences

18    they would not be applying the two years he's been

19    in as credit toward a conditional or an

20    unconditional discharge.  And therefore, that's

21    where federal law operates to say that because he

22    did not get credit on a state sentence, they will

23    apply it to the federal.

24          MR. PELOSI:  I think there may -- first of all,

25    Your Honor, I wanted to verify that the Court had

26    the power to impose a conditional discharge or an

27    unconditional discharge for a robbery in the first

1    degree and it can.

2    THE COURT: I believe I do.

3    MR. PELOSI: You do, you can.

4    THE COURT: All right. There may be --

5    corrections -- there may be a difference if the

6    defendant received an unconditional discharge rather

7    than a conditional discharge, Your Honor. An

8    unconditional discharge indicates that when the

9    Court does impose such a sentence the defendant

10    shall be released with respect to the conviction for

11    which the sentence is imposed without imprisonment,

12    probation supervisions or conditions. A sentence of

13    unconditional discharge is for all purposes a final

14    judgement of conviction.

15    THE COURT: All right. So, I assume you're

16    both settling on an unconditional discharge?

17    MR. FRANCKLING: Yes.

18    MR. PELOSI: I think to satisfy Mr. Dailey's

19    concerns, yes.

20    THE COURT: All right. Now, again, as the

21    gentleman aptly noted, Mr. Dailey, I'm not that

22    familiar with federal law. I accept Counsel's

23    interpretation of that, but I think it was also said

24    when we discussed this very briefly in the hearing

25    room that if what we say is not accurate Mr. Dailey

26    can come back here and withdraw his plea or whatever

27    remedy he's seeking. If we're not accurate, I have

1    every reason to believe, based on what Mr.
2    Weinberger said and based on him presenting me with
3    the copy of the federal legislation, I have every
4    reason to believe that you're going to be getting
5    credit on the federal sentence for the state time
6    you did on this particular case.  That's what I
7    believe.
8         If in fact we are mistaken you can come back
9    here and we can start all over again.
10        Yes, sir.
11        THE DEFENDANT:  What you stated just now, can I
12   have that on transcript --
13        THE COURT:  Yes.
14        THE DEFENDANT:  -- today before I leave this
15   building?
16        THE COURT:  It'll -- excuse me?
17        THE DEFENDANT:  Can I have that today before I
18   leave this building?
19        THE COURT:  No, no, no.  I'm not going to --
20        MR. WEINBERGER:  There is a record made.
21        THE DEFENDANT:  I know that, but I need the
22   record myself.
23        THE COURT:  No.  Either we have an
24   understanding or we don't.  Okay?
25        Let me put this in plain English.  I am very
26   hesitant to enter into this because you've got a
27   state robbery that is serious with a gun.  And I'm

1    going along with the state and the defense -- let's
2    call a spade a spade -- I'm going along with this as
3    an accommodation for you.  Now, you don't have to
4    accept it, but because you receive a hundred-eighty-
5    eight-months your attorneys think -- and I think
6    wisely -- that this is a good route for you to take.
7    You don't have to take it.  But I've never -- I've
8    been on the bench 19 plus years -- I've never gone
9    along with an unconditional discharge for a robbery
10   in the first degree.  Ever, not close.

11        Now, do you want more time to talk to these
12   attorneys?  I don't want you to think I'm trying to
13   intimidate you, because I'm not.

14        THE DEFENDANT:  Nah, nah, that ain't happening.
15   You ain't doing that.

16        THE COURT:  What do you want to do?  You tell
17   me.  Whatever your choice, that's fine with me.

18        THE DEFENDANT:  As long -- as long as
19   everything that's been said here today is correct
20   and I don't get in federal penitentiary and find out
21   that it wasn't correct and I'm stuck with not
22   receiving my two years, then I'm fine with it.
23   Other than that you can do what you want.

24        THE COURT:  I agree with you.  The only thing I
25   haven't told you and I'm going to tell you now
26   because it is part of the overall agreement is --
27   what you're giving up is this:  The state is going

1   along with this -- and I have every reason to
2   believe this is why they're doing this -- is that
3   you are going to be giving up something.  Besides
4   giving up your rights to have a trial on the robbery
5   one -- the state will go through that in a moment --
6   but also, in accordance with the agreement, you are
7   giving up your right to have your appeal.  You're
8   withdrawing -- is it withdrawing -- he is
9   withdrawing the appeal?
10          MR. WEINBERGER:  Yes, Your Honor.
11          THE COURT:  Okay.  You had a hearing in federal
12   court.  Okay?  And apparently police officers or
13   somebody testified that they pulled you over, they
14   pulled you out of a car --
15          MR. WEINBERGER:  No, Your Honor, they actually
16   went up to him where he was standing, put him
17   against the fence and searched him.
18          THE COURT:  Padded you down and they allegedly
19   found a gun.  I don't know if that is true or not.
20   But you had a hearing on that and the judge that was
21   presiding denied your motion to suppress.  The judge
22   said -- he or she, whoever it may be, I don't know
23   anything about the case, only what the lawyer said
24   to me in chambers today -- the judge said words to
25   the effect, I think the arrest was legal.
26          Your lawyers disagreed with that.  Your lawyers
27   were convinced that the stopping of you and the

1    padding down of you was illegal. And the judge

2    found the other way, he said the stop was okay, the

3    pat-down was okay, it was legal, so the gun comes

4    into evidence. And you and your lawyers thought

5    that decision was wrong.

6        And is that the only grounds for the appeal?

7    MR. WEINBERGER:   Yes, Your Honor.

8    THE COURT:   Okay. So, you're appealing that

9    decision in federal court. You and your lawyers are

10   saying, you know, the judge, with all due respect,

11   the judge was mistaken, those police officers

12   stopped me and padded me down and seized the weapon

13   without authority. So, you're appealing to a higher

14   court that the gun should be suppressed. That is

15   the way it is now.

16       As part of this agreement—and I have very

17   reason to believe the state is relying on this or

18   they wouldn't be giving up a robbery case—as part of

19   this agreement the state is insisting that you give

20   up your right in the federal case to appeal the stop

21   and the search of your person. Do you understand

22   what I'm saying?

23   THE DEFENDANT:   Yeah.

24   THE COURT:   So, your appeal -- then you're

25   going to be doing the one-hundred-eighty-eight-

26   months.

27   THE DEFENDANT:   Yeah.

1           THE COURT:  Do you follow me?

2           THE DEFENDANT:  Yeah.

3           THE COURT:  But what you're giving up, besides

4       your right to having a trial on the state robbery

5       case, you're also giving up your right to pursue

6       your appeal on the motion to suppress in the federal

7       case.  Do you understand that?

8           THE DEFENDANT:  Yeah.

9           THE COURT:  If you withdraw the appeal the

10      decision of the federal judge to allow the gun into

11      evidence and to say the search was legal stands.  Do

12      you understand that?

13          THE DEFENDANT:  Yeah.

14          THE COURT:  Okay.  Any question you have of me

15      about that?

16          THE DEFENDANT:  Nah.

17          THE COURT:  Is that a no?

18          THE DEFENDANT:  Yeah, that's a no.

19          THE COURT:  Okay.  I show you respect, I expect

20      the respect in return.  All right, sir?  Fair

21      enough.  Talk to your lawyers and tell me what you

22      want to do.

23          THE DEFENDANT:  It's been done.  Let's do this,

24      man.

25          THE COURT:  You want to go forward, sir?

26          MR. FRANCKLING:  We may, Your Honor.

27          THE COURT:  Tell him what he is signing, Mr.

1      Franckling.

2            MR. FRACKLING:   This is the withdraw of your

3      appeal that has been drafted for you.

4            MR. WEINBERGER:   What he is signing, Your

5      Honor, is the withdraw of the appeal, the

6      stipulation.   After he signs it, I will sign it.

7      And I'll give it to the federal prosecutor, he will

8      sign it and we'll file it with the second circuit.

9            THE COURT:   Now, do you understand that piece

10     of paper that you're signing that's withdrawing your

11     appeal forever?  Do you understand that?

12           THE DEFENDANT:   Yes.

13           THE COURT:   On the motion to suppress where

14     they seized the gun.

15           THE DEFENDANT:   Yeah, I understand, yes.

16           THE COURT:   Okay.   I just want the record to be

17     clear.   When you want to come back to the record I

18     want to make sure it is clear.

19           THE DEFENDANT:   I'm hoping that you make sure

20     that I get the record.

21           THE COURT:   Well, your lawyers will get it in

22     federal court.

23           MR. FRANCKLING:   Also, Your Honor, what I'm

24     going to suggest is --

25           THE DEFENDANT:   I'm not going back to federal

26     court.

27           MR. FRANCKLING:   Just wait a second.   If we

1    could make a copy of this and make a copy a court

2    exhibit.

3            THE COURT:  Oh, I want a copy for our records.

4            MR. WEINBERGER:  Excuse me.  Does Your Honor

5    want a copy after I get the federal prosecutor's

6    signature on it?

7            THE COURT:  I'm not concerned with that.  I

8    just want a copy for today's proceedings.  I

9    certainly defer to you on that.

10            MR. FRANCKLING:  And just for the record, Your

11    Honor, I've also reviewed the pertinent federal

12    statute that Mr. Weinberger has provided Your Honor.

13            THE COURT:  35-85b.

14            MR. FRANCKLING:  Yes.  I'm in agreement with

15    that and I've had several similar, although they

16    weren't robbery ones, they were narcotic related

17    charges, where we've done essentially the same

18    process.  And I've also reviewed the Federal Court

19    Judge Arterton's decision on the motion to suppress.

20    There were some in the excess, I think, of 120 pages

21    in detail and I concur that it would be a fruitless

22    effort to appeal on the basis of what is contained

23    in that.

24            THE COURT:  May I see that form and I'll return

25    it to you, Mr. Weinberger?  Why don't you give that

26    to the Clerk.

27            All right.  Put the gentleman to plea on the

1    robbery in the first degree and read the docket

2    number.

3        Hold on one minute.  Hold on.  I want you to

4    pay attention, Mr. Dailey.  If you want to talk to

5    your lawyers, that's fine, just let me know.

6        MR. FRANCKLING:  That's okay.  I can discuss

7    that portion with him later on.

8        THE COURT:  Now, you're going to go to plea on

9    the state robbery.  And the sentence you're going to

10   get on the state robbery is an unconditional

11   discharge.  Do you understand that?

12       THE DEFENDANT:  Yeah.

13       THE COURT:  Okay.  And we'll take it step by

14   step.

15       THE CLERK:  Edward Dailey, in docket number

16   CR02-5669892, you've been charged with Information,

17   first count, robbery in the first degree, in

18   Hartford on or about 6/5/2002, in violation of

19   Connecticut General Statutes 53a-134(a)(4).  How do

20   you plead, guilty or not guilty?

21       THE DEFENDANT:  Guilty.

22       MR. FRANCKLING:  That's pursuant to Alford,

23   Your Honor.

24       THE COURT:  All right.

25       THE CLERK:  And in the same Information, in

26   count two with conspiracy to commit robbery in the

27   first degree in Hartford on or about 6/5/2002, in

1    violation of Connecticut General Statutes 53a-

2    134(a)(4), 53a-48, how do you plead, guilty or not

3    guilty?

4         THE DEFENDANT:  Guilty to that too.

5         MR. FRANCKLING:  That's also Alford.

6         THE DEFENDANT:  You can throw that in there

7    too.

8         THE COURT:  Hold on.  How do you plead to that,

9    sir?

10        THE DEFENDANT:  Guilty to that too.

11        THE COURT:  Guilty what?  Of that too?

12        THE DEFENDANT:  Yeah.

13        THE COURT:  Okay.

14        MR. FRANCKLING:  That's Alford as well.

15        THE COURT:  We'll go through a lot of

16   questioning.  If you're not satisfied, you let me

17   know.

18        THE DEFENDANT:  Nah.  They just didn't explain

19   that second -- that second offense to me.

20        THE COURT:  Well, perhaps they should have.

21        THE DEFENDANT:  Yeah, they should have.

22        THE COURT:   But in any event the bottom line

23   is -- let me just state, Mr. Dailey, the bottom line

24   is, for both of those charges you're going to get an

25   unconditional discharge.

26        THE DEFENDANT:  Yeah.  Thank you.  Yeah.

27        THE COURT:  Okay.  Mr. Pelosi, will you give a

1        brief factual basis for the charges?

2        MR. PELOSI: Yes, Your Honor.  June 5, 2002,
3        the victim was set up by his friend, Laverne Terry.
4        Laverne Terry had the victim come over to where she
5        was residing and give her a ride somewhere.  The
6        victim showed up and the defendant and co-defendant
7        in this matter, being Laverne Terry, entered the
8        car.  This defendant was armed a nine millimeter gun
9        and the co-defendant had a knife.  The victim knew
10       the defendant and the co-defendant.  Taken from the
11       victim was money and jewelry.

12       State allegations are that he conspired with
13       Laverne Terry to commit this robbery.

14       The recommendation, Your Honor, will be as we
15       have gone through, is an unconditional discharge on
16       each count.  That is in consideration for his
17       withdraw of his appellate issue where he received a
18       fifteen year sentence out of federal court.  With
19       this unconditional discharge he will waive all
20       appellate rights regarding that federal issue.

21       THE COURT: And it is your understanding that
22       he gets credit for the time he's done in state
23       custody for these apparently two years --

24       MR. PELOSI: As has been represented to the
25       state, yes, Your Honor.

26       THE COURT: All right.  Has this been discussed
27       with the federal prosecutor or no?

1           MR. PELOSI:  Yes, it has, Your Honor.

2           THE COURT:  By your office?

3           MR. PELOSI:  Yes, it has, myself.

4           THE COURT:  All right.  Sir, I want to ask you

5      some questions.  This is about the robbery of June

6      '02.  And I want you to understand by pleading

7      guilty under the Alford Doctrine these are the

8      rights you're giving up concerning this particular

9      case.  By pleading guilty you are giving up your

10     right to have a trial on this robbery before a judge

11     or a jury.

12          You're giving up your right to have the

13     witnesses against you come into court and you seeing

14     them in court, facing them in court and confronting

15     them in court.

16          By pleading guilty you're giving up your right

17     to have you or your lawyer, on your behalf, question

18     the witnesses against you and cross-examine them.

19          By pleading guilty you're giving up your right

20     to remain silent as to these charges.

21          You're giving your right not to say anything

22     against yourself.  You're giving up your right to

23     testify on your behalf at a trial.

24          You're giving up your right to have others

25     testify on your behalf at a trial.

26          You are giving up your right to continue to

27     plead not guilty to these charges and have the state

1    prove the crime against you beyond a reasonable
2    doubt at a trial.

3              And you're giving up your right to put any kind
4    of defense you may have to these charges by pleading
5    guilty.

6              Do you understand those rights that you're
7    giving up, sir, forever concerning this June '02
8    robbery?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  Very good.  Now, are you,
11   not counting this case here and not counting the
12   federal sentence, are you on probation or parole,
13   sir, right now anywhere?

14             THE DEFENDANT:  No.

15             THE COURT:  Very good.  Are you under the
16   influence of any alcohol or drugs right now today?

17             THE DEFENDANT:  No.

18             THE COURT:  You do not appear to be.  Both
19   attorneys, you have discussed this matter with this
20   gentleman this morning, have any reason to believe
21   he is under the influence?

22             MR. FRANCKLING:  Discussed it with him and have
23   no reason to believe he was under the influence.  He
24   was --

25             THE COURT:  Mr. Weinberger?

26             MR. WEINBERGER:  I'm satisfied, Your Honor.

27             THE COURT:  Very good.  Now, sir, have you

1      discussed your plea of guilty to this charge, both

2      charges, and the consequences of your plea of guilty

3      to these charges with your attorneys?

4             THE DEFENDANT:  Yes.

5             THE COURT:  Have you had enough time to discuss

6      these very important matters with him?

7             THE DEFENDANT:  Yes.

8             THE COURT:  With them?  Okay.  And have your

9      attorneys advised you as to what the state would

10     have to prove in order to convict you of robbery if

11     you had a trial?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Okay.  And are you satisfied with

14     the advice they've given you?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Very good.  Now, I know you said

17     your lawyers explained it to you and I just want to

18     go over it for the record.

19            Larceny is taking property from another person,

20     from an owner, with the intent to permanently

21     deprive the owner of that property.  It becomes a

22     larceny -- or a stealing becomes a robbery when

23     there is the force or the threat of force in the

24     taking of the property.

25            It becomes a robbery in the first degree when

26     one or more of the parties displayed what they

27     represent by their words or conduct to be a pistol

1     or firearm.  Then the theft becomes a robbery in the
2     first degree.  Do you understand that?
3                THE DEFENDANT:  Yes.
4                THE COURT:  Okay.  So the state would have to
5     prove, if you had a trial, that you were in the
6     process of committing a larceny on the victim on
7     June 5, 2002 at the time and place indicated and
8     that during the course of the larceny you or
9     somebody else that was acting with you displayed
10    what he or she represented by his or her words or
11    conduct to be a pistol or firearm.  Do you
12    understand that?
13               THE DEFENDANT:  Yes.
14               THE COURT:  Let me just double check the
15    statute for one minute, make sure I don't forget
16    anything.  So, the state would have to prove if you
17    had a trial that during a course of a larceny where
18    there is force or threat of force if you or another
19    participant displays or threatens the use by what he
20    represents -- displays or threatens the use of what
21    he represents by his words or conduct to be a pistol
22    or revolver that is a violation of this statute.  Do
23    you understand that?
24               THE DEFENDANT:  Yes.
25               THE COURT:  The state would have to prove each
26    and every one of those parts beyond a reasonable
27    doubt in order to convict you of this case.  Do you

1      understand that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Okay.  Now, sir, there is an

4      agreement here.  A very unusual situation, there is

5      an agreement here where both sides are recommending

6      to me an unconditional discharge.  Do you understand

7      that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  It is a conviction, it goes on your

10     record as a conviction for both counts, but there is

11     virtually no sentence.  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  Also, in return the state is

14     asking for your waiver of your right to appeal which

15     I'll get into in a moment.  Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Okay.  And if we make a mistake on

18     the credit you could come back here -- all right --

19     and we could go right back to square one.  But I

20     have to advise you of the following:  If we go back

21     to square one, which is where we were at noon time -

22     - all right -- here is the downside for you, the

23     state has the authority -- if you say, Judge you

24     represented to me on September 22nd I was going to

25     get two years credit on the federal sentence and I'm

26     not getting get, you lied to me or you made a

27     mistake or whatever, the deal is off.

1          I'll say, Okay, the deal is off.  All right?
2          However, you've got to be aware that the state
3     reserves the right to reinstitute the prosecution of
4     the robbery case of June 2002.  Do you understand
5     that?
6          THE DEFENDANT:  Yes.
7          THE COURT:  We'll be put in the same shoes we
8     were in an hour ago.
9          THE DEFENDANT:  Right.
10         THE COURT:  Do you understand that?
11         THE DEFENDANT:  Yes.
12         THE COURT:  Okay.  Any question about that,
13    sir?
14         THE DEFENDANT:  No.
15         THE COURT:  Okay.  Besides those things, have
16    any other promises been made to you in order to
17    induce you to plead guilty to these charges?
18         THE DEFENDANT:  No.
19         THE COURT:  Has anybody threatened you, sir, in
20    order to induce you to plead guilty to either of
21    these charges?
22         THE DEFENDANT:  No.
23         THE COURT:  You understand that once I accept
24    your pleas of guilty, if I do, you will not be
25    allowed to withdraw them or take them back except
26    with the permission of the judge.  Do you understand
27    that?

1           THE DEFENDANT:  Yes.

2           THE COURT:  And I've made an exception here

3   that you can withdraw your plea if you don't get the

4   state credit.

5           THE DEFENDANT:  Yes.

6           THE COURT:  Okay.  Other than that --

7           THE DEFENDANT:  Federal credit.

8           THE COURT:  Okay.  If you don't get the state

9   credit applied to the federal.  Okay?  That's your

10  agreement.

11          THE DEFENDANT:  Yes.

12          THE COURT:  Okay.  It is only on that basis

13  that you can withdraw your plea.  So, if we continue

14  the matter and you change your mind for some other

15  reason -- okay, let's say you changed your mind for

16  whatever reason, it doesn't have to do with you not

17  getting credit.  You come back here I'm going to

18  say, I'm sorry, Mr. Dailey, it's too late, I

19  accepted your pleas on September 22nd.  Do you

20  understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Now, the penalty for this offense,

23  robbery in the first degree, is not less than one

24  year in jail which is suspendable, up to twenty

25  years in jail, up to a $15,000 fine.  Do you

26  understand that?

27          THE DEFENDANT:  Yes.

1           THE COURT:  If you are not a citizen of the

2    United States of America conviction for this offense

3    could result in deportation, exclusion from

4    admission to the United States and/or denial of

5    naturalization pursuant to the laws of the United

6    States.  Do you understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  There is a new state law that

9    requires if you're convicted of a state felony, and

10   this is a felony, you can be subjected to a taking

11   of body fluids or swabbing of the mouth or whatever

12   for purposes of DNA analysis.  Do you understand

13   that?

14          THE DEFENDANT:  That just came out?

15          THE COURT:  Body fluids -- samples of body

16   fluids can be taken from --

17          THE DEFENDANT:  Nah.  I'm saying, that law just

18   came when?

19          THE COURT:  Several years ago.

20          THE DEFENDANT:  Now, you're telling me they can

21   just tell me we want blood.

22          THE COURT:  It could be blood, it could saliva,

23   it could be urine.  The usual manner --

24          THE DEFENDANT:  It is mandatory that I give it

25   to them if they want it?

26          THE COURT:  That's right.  And the way they've

27   been doing it in the state system, I don't know

1    about the federal system, is they swab your mouth

2    with a Q-Tip, they swab your mouth.  The point is --

3    you want to say something, Mr. Weinberger?

4        MR. WEINBERGER:  Yes.  That will be done as a

5    matter of routine when he gets to federal prison.

6    So, it is something that is going to happen

7    regardless.

8        THE COURT:  Well, this is a state conviction so

9    I'm obligated to --

10        MR. WEINBERGER:  Right.  I just wanted to say,

11    for his benefit, he should understand that --

12        THE COURT:  Okay.  He tells me you're going to

13    get it anyway.  I don't know that.

14        MR. FRANCKLING:  Can I have just one second?

15        THE COURT:  Yes.

16        (Brief attorney-client conversation.)

17        THE COURT:  Do you understand that?

18        THE DEFENDANT:  Yeah.

19        THE COURT:  Okay.  After hearing everything

20    I've said, is there anything I've said that you did

21    not understand?

22        THE DEFENDANT:  No.

23        THE COURT:  Is there any question of me that

24    you have about any aspect of this proceeding?

25        THE DEFENDANT:  No.

26        THE COURT:  You do understand -- I'm going to

27    return this to Mr. Weinberger.  But you do

1     understand that the consideration that the state is
2     getting for agreeing to an unconditional discharge,
3     which is like nothing, but what the state wants and
4     this is what you're giving them, is that you're
5     giving up forever your right to appeal the motion to
6     suppress in that particular case in federal court.
7     Do you understand that?
8              THE DEFENDANT:  Yes.
9              THE COURT:  And once I've accepted your plea,
10    if you change your mind about withdrawing this
11    appeal and call you lawyer and you say, no, I
12    changed my mind, I want to press the appeal, I think
13    the gun was taken illegally.  They're going to say
14    you gave up that right to appeal in state court
15    before Judge Miano.  Do you understand that?
16             THE DEFENDANT:  Yes.  I knew I knew you.
17             THE COURT:  Okay.  And question about it?  Well
18    --
19             THE DEFENDANT:  I though I was going before
20    Solomon.  That ain't Solomon.
21             THE COURT:  No, I'm not Judge Solomon.
22             THE DEFENDANT:  That ain't no Solomon.
23             THE COURT:  All right.  You understand that
24    you're giving up your right to appeal?
25             THE DEFENDANT:  Yes.
26             THE COURT:  In the federal case?
27             THE DEFENDANT:  Yes.

1              THE COURT:  And also on the conspiracy to
2       commit robbery, and I didn't mention, on the
3       conspiracy to commit robbery that means an
4       agreement.  That you had a understanding, nothing
5       formal, nothing in writing, that you had an
6       understanding with another person, namely that young
7       lady that the prosecutor mentioned Laverne Terry.
8       That is what conspiracy is, that you had a
9       understanding with Laverne Terry to commit this
10      robbery and that either one of you took an overt
11      step to carry it out, either brought the victim to
12      the car or got the gun or got the knife or whatever.
13      That is what the state would have to prove to for
14      the conspiracy charge.  Do you understand that?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Okay.  After hearing everything
17      I've said you still want your plea of guilty to
18      stand?
19              THE DEFENDANT:  Hun?
20              THE COURT:  You still want your pleas of guilty
21      to stand?
22              THE DEFENDANT:  Yes, yes, yes.
23              THE COURT:  Okay.  Any questions of me, sir?
24              THE DEFENDANT:  This is the second time in my
25      life you can gave me a long sermon.
26              THE COURT:  Me?
27              THE DEFENDANT:  Yeah.

1      THE COURT:  Mr. Dailey, you're getting -- well,

2   I'm not going to belabor this.  Do either defense

3   counsel, you that is standing and you that as a

4   courtesy is here, Mr. Weinberger, either attorney

5   know of any reason why the court should not accept

6   the plea?

7      MR. FRANCKLING:  No, Your Honor.

8      MR. WEINBERGER:  No, Your Honor.

9      THE COURT:  State's attorney?

10      MR. PELOSI:  No, Your Honor.

11      THE COURT:  All right.  Court accepts the pleas

12   -- oh, under the Alford Doctrine -- the Alford

13   Doctrine -- I missed something.  The Alford Doctrine

14   means this, you didn't plea a straight plea, you

15   plead under the Alford Doctrine.  The Alford

16   Doctrine means the following:  That you're not

17   admitting to committing this robbery on June 5, 2002

18   with Ms. Laverne Terry, but you're pleading guilty,

19   nevertheless, because you believe, knowing all that

20   you know, that if you had a trial on this case you

21   believe that the judge or jury would probably find

22   you guilty of this charge after a trial.  Is that

23   true or not true?

24      THE DEFENDANT:  Yes.

25      THE COURT:  It is true?

26      THE DEFENDANT:  That's what I agreed to, yeah.

27      THE COURT:  Okay.  That's all I want to hear.

1    And the second question I have to ask you is that
2    you believe, knowing all that you know, that if you
3    did have a trial on this matter, the state matter,
4    and were probably convicted, you believe the penalty
5    you would get from the judge after trial would
6    probably be a harsher penalty than the unconditional
7    discharge that is being recommended today.
8         THE DEFENDANT:  Yes.
9         THE COURT:  I can assure you of that.  All
10    right.  State know of any reason why -- any party
11    know of any reason why I shouldn't accept the pleas?
12         MR. FRANCKLING:  No, Judge.
13         THE COURT:  Okay.  All right.  Court makes a
14    finding of guilty on each.  Court makes a finding it
15    is a knowing, intelligent and voluntary waiver the
16    gentleman's rights.  There is a factual basis for
17    the pleas and it is tendered with the effective
18    assistance of counsel.
19         Again, I've turned over the form to the clerk.
20    The clerk will make a copy for our records.  Give
21    the original back to Mr. Weinberger.
22         All right.  PSI is waived?
23         MR. FRANCKLING:  That is waived, Your Honor,
24    discussed that with Mr. Dailey.
25         THE COURT:  State waives it?
26         MR. PELOSI:  Yes.
27         THE COURT:  All right.  State want to be heard?

1          MR. PELOSI:  No, Your Honor.

2          THE COURT:  We'll go into sentencing.  Mr.

3     Franckling, do you want to be heard?

4          MR. FRANCKLING:  No, Your Honor.

5          THE COURT:  Do you want to be heard, Mr.

6     Weinberger?

7          MR. WEINBERGER:  No, Your Honor, thank you.

8          THE COURT:  Do you want to be heard, Mr.

9     Dailey?

10          THE DEFENDANT:  Nah.  Still hanging around --

11          THE COURT:  Excuse me?

12          THE DEFENDANT:  Still hanging around from

13     Morgan Street, hun?

14          THE COURT:  It is gone.  Morgan Street is gone,

15     Mr. Dailey.  All right.

16          The Court will accept the agreement.  Court

17     will impose a sentence on each count of an

18     unconditional discharge on each count and it's the

19     Court's understanding, based on the representations

20     to the Court and also based on my reading of the

21     federal statute 35-85b that the federal government -

22     - he will be given credit for the state time because

23     this sentence has not been credited against another

24     sentence.

25          All right.  Cost and fees are waived.  Good

26     luck, sir.

27          MR. FRANCKLING:  Thank you, Your Honor.

1          THE CLERK:   Please hold the defendant one

2     moment, please.

3          THE COURT:   Hold on.   I hope doesn't get

4     sentence review on this.

5          THE DEFENDANT:   And I hope that you don't be

6     around for review.

7          THE CLERK:   No, Your Honor.   But for the record

8     I have to give his notice of obligation regarding

9     the DNA requirements.

10          THE COURT:   Good luck, sir.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DOCKET NO: CR020566982 S

STATE OF CONNECTICUT

    V.

EDWARD DAILEY

C E R T I F I C A T I O N

       I hereby certify that the foregoing is a true and accurate transcript of the tape recorded proceedings, to the best of my ability, in the aforementioned matter, heard before the Honorable Thomas P. Miano in Superior Court, Hartford, Connecticut, on the 22nd day of September, 2004.

       Dated at Hartford, Connecticut this 5th day of May, 2005.

Jaime Dubois-DeLarosa
Court Monitor